No.  12-10208


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————————

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

KENNETH MARTIN KYLE,

Defendant/Appellant.

———————————————————

**APPELLANT KENNETH MARTIN KYLE'S
OPENING BRIEF ON APPEAL**

Appeal from the United States District Court
for the Northern District of California
The Honorable Jeffrey S. White
United States District Judge
No. 10 Cr. 245 JSW


COLEMAN & BALOGH LLP
ETHAN A. BALOGH
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440

Attorneys for Defendant/Appellant
KENNETH MARTIN KYLE

# TABLE OF CONTENTS

I. Introduction.................................................................................................1

II. Jurisdiction...............................................................................................2

III. Bail Status...............................................................................................3

IV. Issues Presented.......................................................................................3

V. Statement of the Case...............................................................................3

VI. Statement of Facts....................................................................................9

VII. Summary of the Argument.....................................................................13

VIII. Argument..............................................................................................15

     A.    The appellate waiver in the parties' plea agreement is unenforceable, and even if it was enforceable, it should not be under the facts of this case and this Court's precedent...........................................15

         1.    Standard of review.................................................................15

         2.    Discussion...............................................................................15

             a.    The Government's breach of the proffer agreement defeats any enforcement of the appellate waiver...........15

             b.    Refusal to exercise jurisdiction over this appeal would work a miscarriage of justice...........................................19

     B.    The district judge preannounced his intended sentence in violation of Rule 11................................................................................20

         1.    Standard of Review.................................................................20

         2.    Discussion...............................................................................20

C.   The district judge's comments about appellant betrayed a deep-seated antagonism that rendered fair judgment impossible..........................26

    1.   Introduction and standard of review........................................26

    2.   Discussion................................................................................26

D.   The district court plainly erred when it calculated the advisory Guidelines to recommend a sentence of 324-405 months.................28

    1.   Introduction and standard of review........................................28

    2.   Discussion................................................................................30

        a.   The Guidelines properly calculated................................30

        b.   The first incorrect Guidelines calculation......................30

            i.   Mr. Kyle did not "use a computer" within the meaning of USSG § 2A3.1....................................31

            ii.   The "vulnerable victim" enhancement did not apply....................................................................34

        c.   The second incorrect Guidelines calculation.................35

            i.   The cross-reference in USSG § 2A3.1(c)(2) did not apply to this case............................................36

        d.   The remaining factors of the plain error test are met here................................................................................38

E.   The 450-month sentence is substantively unreasonable....................39

    1.   Introduction and standard of review........................................39

    2.   Discussion................................................................................40

a.    The appropriateness of the 30-year minimum sentence......................................................................40

b.    The history and characteristics of Kenneth Kyle...........41

c.    The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense......................................42

d.    The need for the sentence to afford adequate deterrence to criminal conduct..........................................................43

e.    The need for the sentence to protect the public from further crimes of the defendant......................................44

f.    The need to avoid unwarranted sentence disparities.....44

IX.  Conclusion......................................................................................47

# TABLE OF AUTHORITIES

## Cases

*Earp v. Cullen*, 623 F.3d 1065 (9th Cir. 2010)..........................................24

*Johnson v. United States*, 520 U.S. 461 (1997)..................................29, 30

*Liteky v. United States*, 510 U.S. 540 (1994).....................................*passim*

*Santobello v. New York*, 404 U.S. 257 (1971).....................................16, 17

*United States v. Alcala-Sanchez*, 666 F.3d 571 (9th Cir. 2012)........................16, 17

*United States v. Amos*, 2012 WL 3608600 (6th Cir. 2012).....................................45

*United States v. Anderson*, 993 F.3d 1435 (9th Cir. 1993)...............................23, 24

*United States v. Archdale,* 229 F.3d 861 (9th Cir. 2000).........................................35

*United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007).......................................15, 19

*United States v. Baramdyka*, 95 F.3d 840 (9th Cir. 1996)..........................15, 16, 18

*United States v. Bosch*, 951 F.2d 1546 (9th Cir. 1991)..........................................26

*United States v. Bruce*, 976 F.2d 552 (9th Cir. 1992)......................................*passim*

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc)..............................28

*United States v. Child*, 167 Fed.Appx. 666 (9th Cir. 2006)....................................46

*United States v. Crowe*, 563 F.3d 969 (9th Cir. 2009)......................................29, 40

*United States v. DeCoteau*, 630 F.3d 1091 (8th Cir. 2011)....................................46

*United States v. DeMarce*, 564 F.3d 989 (8th Cir. 2009)........................................46

iv

*United States v. Eagle*, 293 Fed.Appx. 506 (9th Cir. 2008)....................................45

*United States v. Esquivel-Ortega*, 484 F.3d 1221 (9th Cir. 2007)..........................26

*United States v. Garfield*, 987 F.2d 1424 (9th Cir. 1993)........................................21

*United States v. Gonzalez*, 16 F.3d 985 (9th Cir. 1993)..............................16, 18, 19

*United States v. Gonzalez-Melchor*, 648 F.3d 959 (9th Cir. 2011).........................15

*United States v. Hammons*, 558 F.3d 1100 (9th Cir. 2009)......................................39

*United States v. Harris*, 628 F.3d 1203 (9th Cir. 2011)...........................................19

*United States v. Hill*, 222 Fed.Appx. 635 (9th Cir. 2007)........................................46

*United States v. Hisbadhorse*, 474 Fed.Appx. 533 (9th Cir. 2012)........................45

*United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007) (en banc)........15, 19

*United States v. Jass*, 569 F.3d 47 (2d Cir. 2009)....................................................33

*United States v. Johnson*, 610 F.3d 1138 (9th Cir. 2010)........................................26

*United States v. Juvenile No. 1 (LWQ),* 38 F.3d 470 (9th Cir. 1994)......................43

*United States v. King*, 604 F.3d 125 (3d Cir. 2010)..................................................46

*United States v. Lamere*, 337 Fed.Appx. 669 (9th Cir. 2009).................................46

*United States v. Liranzo*, 944 F.2d 73 (2d Cir. 1991).............................................16

*United States v. Little Owl*, 475 Fed.Appx. 185 (9th Cir. 2012*)*...........................45

*United States v. Lohnes*, 554 F.3d 1166 (8th Cir. 2009)..........................................46

*United States v. Lyons*, 363 Fed.Appx. 485 (9th Cir. 2010)....................................46

*United States v. Manzo*, 675 F.3d 1204 (9th Cir. 2012).....................................16, 17

*United States v. Mooney*, 303 Fed.Appx. 737 (11th Cir. 2008)..............................47

*United States v. Morgan*, 164 F.3d 1235 (9th Cir. 1998).........................................37

*United States v. Munoz-Camarena*, 631 F.3d 1028 (9th Cir. 2011)........................29

*United States v. Nielsen*, — F.3d —, 2012 WL 3983770 (9th Cir. 2012)..............34

*United States v. Reaves*, 253 F.3d 1201 (10th Cir. 2001).......................................33

*United States v. Rendon-Duarte*, 490 F.3d 1142 (9th Cir. 2007)...........................29

*United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) (en banc)........................40

*United States v. Robertson*, 350 F.3d 1109 (10th Cir. 2003)..................................32

*United States v. Saeteurn*, 504 F.3d 1175 (9th Cir. 2007)........................................44

*United States v. Sandcrane*, 311 Fed.Appx. 54 (9th Cir. 2009)..............................46

*United States v. Schumaker,* 2012 WL 1886481 (11th Cir. 2012)..........................46

*United States v. Tuchawena*, 222 Fed.Appx. 659 (9th Cir. 2007).........................46

*United States v. Vasquez-Cruz*, --- F.3d ----, 2012 WL 3743167 (9th Cir. 2012)..29

*United States v. White Bull*, 646 F.3d 1082 (8th Cir. 2011)....................................46

*United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012)..............................16, 17, 18

*United States v. Yarlott*, 438 Fed.Appx. 568 (9th Cir. 2011)..................................45

vi

**Statutes**

18 U.S.C. § 1153...................................................................................45, 46

18 U.S.C. § 2241....................................................................................*passim*

18 U.S.C. § 2422........................................................................................47

18 U.S.C. § 2246........................................................................................46

18 U.S.C. § 3553....................................................................................*passim*

18 U.S.C. § 3742..........................................................................................3

18 U.S.C. 4248......................................................................................6, 44

28 U.S.C. § 455..........................................................................................26

28 U.S.C. § 1291..........................................................................................3

28 U.S.C. § 2106....................................................................................13, 24

**Rules**

Fed. R. App. P. 4..........................................................................................3

Fed. R. App. 11....................................................................................*passim*

**Guidelines Provisions**

USSG § 2A3.1......................................................................................*passim*

USSG § 2G1.1..........................................................................................33

USSG § 2G2.1......................................................................................*passim*

USSG § 3E1.1....................................................................................30, 31, 36

# I.  Introduction

This difficult case arises from appellant Kenneth Martin Kyle's sexual abuse of an infant.  Confronted with these reprehensible allegations, Mr. Kyle accepted responsibility, waived appeal of a significant Fourth Amendment challenge that would have led to the dismissal of these charges, and pleaded guilty.  With the firm support of the United States, he urged the district court to sentence him to 30 years imprisonment.  The United States Sentencing Guidelines ("USSG") advised a sentence of 168-210 months, making the requested (and mandatory-minimum) 360-month sentence a far above-Guidelines sentence.

The district judge rejected that 30-year sentence as "too lenient." Thereafter, in violation of Federal Rule of Criminal Procedure 11, the district judge injected himself into plea discussions when he informed the parties that he intended to sentence Mr. Kyle to life imprisonment following any trial conviction. As a result, Mr. Kyle accepted a new and far harsher plea agreement to avoid the district judge's stated ends.  Because the district judge violated the prohibition against judicial participation in plea discussions, the Court should vacate Mr. Kyle's conviction and permit him to withdraw his plea and proceed before a different district judge upon remand.

1

In addition, the record reflects that throughout the proceedings, the parties, the probation officer, and the district court miscalculated the Sentencing Guidelines to call for sentences far higher than the correct calculation of the Guidelines; these errors plainly affected the district court's assessment of the case. Ultimately, the district court miscalculated the Guidelines to advise a sentence of 324-405 months, and then settled on a sentence of 450 months, far above the Guidelines's recommendation and the equivalent of a life sentence.

Because the district judge miscalculated the Sentencing Guidelines and expressed a deep-seated antagonism against Mr. Kyle, and because the 450-month sentence is substantively unreasonable, the Court should at a minimum vacate Mr. Kyle's sentence and remand to a different district judge for resentencing.

## II. Jurisdiction

Mr. Kyle appeals the district court's judgment and sentence arising from his guilty plea to aggravated sexual abuse with children, in violation of 18 U.S.C. § 2241(c).  Dkt 68; ER 52.[1]  The district court asserted jurisdiction pursuant to 18 U.S.C. § 3231 and entered judgment on March 13, 2012.  *Id.*  On April 19, 2012, the district court granted Mr. Kyle's *pro se* request for an extension of time to

---

[1]"Dkt" refers to entries on the district court's docket.  "ER" refers to Appellant's Excerpts of Record. "PSR" refers to the Presentence Report.

2

notice his appeal, *see* ER 50, which Mr. Kyle timely noticed on April 23, 2012.

ER 48; *see* Fed. R. App. P. 4(b)(4). This Court has jurisdiction to review the

judgment and sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### III. Bail Status

Mr. Kyle is serving his custodial sentence of 450 months and is scheduled

for release from the Bureau of Prisons on November 18, 2042.

### IV. Issues Presented

1.      Did the district judge participate in plea discussions in violation of

Federal Rule of Criminal Procedure 11?

2.      Did the district judge's comments about appellant—including his

expressed wish that Mr. Kyle "not survive in prison"—constitute a deep-seated

antagonism that rendered fair judgment impossible?

3.      Did the district court plainly err when it calculated the Sentencing

Guidelines to call for a sentence of 324-405 months?

4.      Is Mr. Kyle's 450-month sentence substantively unreasonable?

### V. Statement of the Case

On April 1, 2010, a federal grand jury sitting in the Northern District of

California indicted Kenneth Martin Kyle for one count of aggravated sexual abuse

of a child, in violation of 18 U.S.C. § 2241(c), and one count each for production,

3

distribution, possession, and transportation of child pornography, in violation of

18 U.S.C. 2251 and 2252.  ER 162-65.[2]  Thereafter, Mr. Kyle litigated discovery

issues and a motion to suppress evidence obtained from the warrantless search of

his computer and mobile telephone, each of which was denied.  *See* Dkt 17, 18,

21, 25-31, 35-37, 80.

On May 26, 2011, Mr. Kyle pleaded guilty to the section 2241(c) claim, *i.e.*,

the sexual abuse of a child.  ER 118-56.  The plea agreement miscalculated the

Sentencing Guidelines to result in a Total Offense Level of 39, which in Criminal

History Category I advised incarceration for 262-327 months.  ER 133, 153.

Nevertheless, pursuant to the statute's mandatory-minimum 30-year penalty, the

parties sought a sentence of 360 months.  ER 153.

On September 29, 2011, the probation office disclosed its PSR.  That report

miscalculated the Sentencing Guidelines even worse.  The PSR asserted that the

Guidelines for violations of 18 U.S.C. § 2241(c)—*i.e.*, USSG § 2A3.1—did *not*

apply to this case, and urged the district court to apply USSG § 2G2.1.  PSR ¶ 46.

The PSR then misapplied that section when it arrived at a Total Offense Level of

41, which recommended incarceration for 324-405 months.  PSR ¶ 93.

---

[2]The child's mother, Tessa Van Vlerah, was charged with one count of
production of child pornography by a parent, in violation of 18 U.S.C. § 2251(a).

4

On October 7, 2011, the parties presented their sentencing memoranda. The

Government urged the 360-month sentence, as follows:

> Under the plea agreement, Kyle will spend thirty years in prison and emerge as an elderly man. He will then be under supervised release until he is well into his 80s. The chance that Kyle will not survive this sentence is more than trivial. By the time Kyle emerges from prison, he will pose hardly any threat to the public at large. While it is not too uncommon to encounter elderly sex offenders who continue to break the law, it is very unlikely, in the United States' opinion, that Kyle would take this risk on supervised release after having spent more than half his adult life in prison. It is very unlikely that Kyle will survive a ten year term of supervised release, but if he does without incurring any violations, the United States believes that he could spend that last couple years of his life without supervision, and without posing a threat to anyone.

> Also, by the time Kyle emerges from a thirty-year prison term, the victim in this case will be a grown woman. She will have had the opportunity to live out her childhood and her young adult life with Kyle safely behind bars. And by the time Kyle finishes his prison term, the victim will have had years to deal with the consequences of his abuse, and hopefully to overcome it.

> Though the parties' recommended sentence in this case is in the heartland of even the higher sentencing guidelines calculation in the pre-sentence report, it is tempting to ask why an even longer sentence should not be imposed, given Kyle's abhorrent conduct. When the perspective is from the beginning of a prison term, a 35- or 40-year sentence does not seem too severe when compared to a 30-year sentence, and perhaps all of them are close enough to a life sentence that the difference does not appear to matter all that much. The difference, from the United States' perspective, is that a 30-year sentence – when imposed on a 47-year-old man – is a sufficiently long sentence that it serves the punitive, deterrent, and public safety goals of the Sentencing Reform Act while giving the defendant an

incentive to change his ways, better his life, and perhaps do some good in the world that he would not have if the sentence amounted to a life sentence.

Finally, there are two aspects of the defendant's conviction in this case that deserve some mention, insofar as they may sway the Court in choosing between a 360-month sentence and a 405-month sentence. As a precondition to his plea agreement, the defendant gave law enforcement a proffer about individuals whom he thought were or had abused children. While this information did not lead to any arrests, the defendant offered the information with the knowledge that it would not affect the 360-month sentence that he had agreed to. Also, the plea agreement waives the defendant's right to appeal the denial of his motion to suppress, which the United States does not believe had merit, but which was certainly not frivolous.

ER 81-82.

Mr. Kyle also urged the imposition of the 360-month sentence. In support, he presented evidence that he was amenable to treatment, genuinely remorseful, and subject to 18 U.S.C. 4248, which would permit his continued incarceration through civil commitment unless he persuaded the Government of his rehabilitation during this lengthy period of incarceration. ER 84-90.

On October 11, 2011, the district court noticed its intent to reject the plea agreement, and it announced that ruling in open court two days later. Dkt 52; ER 66-68. The district judge reasoned that the 30-year sentence was "too lenient[,]" and then noted the:

6

> discrepancy between the plea agreement and the presentence report
> with respect to the total offense, adjusted offense level. The
> probation department has determined that it's at 41 and the parties
> have determined that it's going to change the plea agreement so that
> it's a 39 [sic].

ER 66-67. The Government agreed to this higher offense level, which as stated,

advised a sentence of 324-405 months. ER 67.

The district court then informed the parties that:

> this is a case that does not warrant a guideline sentence. It warrants
> an above-guideline sentence, substantially above-guidelines sentence,
> and not necessarily the statutory maximum [of life imprisonment.]

ER 71-72. As permitted, Mr. Kyle withdrew his guilty plea. ER 72.

At the next hearing, the district court scheduled trial for April 2012,

explaining "I want this case to go to trial. It's going to go to trial. If not,

we'll deal with it that way." ER 41-42. The district court then sought comment,

and defense counsel explained that he had retained an actuary "to give the court a

benchmark against which to measure what a life sentence would be in Mr. Kyle's

specific case, and [why] that will be helpful." ER 42.

In response, the district judge announced his intended sentence, as follows:

> Well, it is [helpful] and it isn't, because I said that the court's view is
> that this man is never going to get out of jail, period. So telling me
> that you're going to submit an evaluation of an actuary doesn't really
> help me because, quite frankly, given what I know about this case,
> I'm prepared to impose a life sentence.

7

ER 42.  The district judge then conceded the had not previously announced that intention, explaining that:

> my view has changed[,] [a]nd since the defendant hasn't changed his position in reliance on what I said, the record remains the same but the court's view has changed.

ER 44.  The judge then went further, making plain: "if this man is out of jail at any time during the lifetime of this child, I think it's a very deleterious fact for this victim child."  ER 45.  Two weeks later, the parties informed the court that trial would be avoided by a new plea agreement.  Dkt 62.

The final calling of the case came on March 8, 2012, when Mr. Kyle pleaded guilty and the district court imposed sentence.  Upon sentencing, the district judge tellingly told Mr. Kyle:

> [A]lthough there are factors in the guidelines—and one of those factors that the guidelines doesn't take into account is pure evil.  And I think what you did is pure evil.  *And I hope that you don't survive in prison*.  And, the only reason I'm agreeing to the sentence that's been agreed to by you and the Government is because of what the Government states, is sparing the child the trial that I originally ordered in this case, so that you could have a life sentence.

ER 30-31 (emphasis added).  He then sentenced Mr. Kyle to 450 months incarceration with the recommendation it be served "in a maximum-security institution."  ER 36.

## VI.  Statement of Facts

Before the district court, the United States presented the facts of this difficult case concisely and with care to limit the inflaming of emotions.  Mr. Kyle thus presents the Government's Statement of Facts verbatim:[3]

"A.    <u>The File-Sharing Lead</u>.

Kenneth Kyle came to the FBI's attention through his use of peer-to-peer file sharing software to trade child pornography in December 2009.  An FBI agent in Virginia who was using similar software in an undercover capacity noticed that a user with the moniker "CruelSob" was sharing image and video files with titles indicative of child pornography.  The agent downloaded 148 child pornography images and one video file containing child pornography from CruelSob's shared folder.

The FBI traced CruelSob's IP address from the file-trading session to a Comcast cable internet customer named Kenneth Kyle at 6__ N_____ S_____, Apt. ___ in San Francisco, California.  The FBI passed this lead on to the San Francisco Police Department, which obtained a search warrant for this address on

---

[3]The only exceptions are the redaction of Mr. Kyle's home address, which the Government included in violation of Federal Rule of Criminal Procedure 49.1 and which Mr. Kyle redacts pursuant to Federal Rule of Appellate Procedure 25(a)(5), and a "[sic]" added on page 12.

9

March 8, 2010, and executed it on March 10, 2010.  San Francisco police officers seized several computers and computer peripherals, and learned from a roommate that Kyle was out of the country, apparently on business.  San Francisco police officers also learned that Kyle was an assistant professor of public affairs and administration at California State East Bay University in Hayward.

FBI agents alerted Customs and Border Patrol (CBP) agents that Kyle was suspected of distributing and possessing child pornography, and that he might be returning to the United States in the near future.  Based on this information, CBP agents flagged Kyle for a secondary inspection upon his return to the United States.

B.    The Airport Search.

On the afternoon of March 15, 2010, Kyle arrived at San Francisco International Airport aboard Lufthansa Flight No. 454 from Frankfurt, Germany. CBP officers directed Kyle to a secondary inspection.  During this inspection, CBP officers examined Kyle's laptop and found several images of child pornography.  ICE agents also examined some of the images, and agreed that they were child pornography.  The images included photographs of infants and toddlers being sexually abused by adults.  Kyle admitted to CBP officers that the laptop was his.

10

During the border search, CBP officers also searched Kyle's cell phone, and discovered a series of outgoing text messages to various numbers. A series of these messages were sent to a number with an area code in the St. Louis, Missouri, area to a recipient named Tessa Van Vlerah. The messages, sent from October through December, 2009, suggested that Kyle and Van Vlerah had a sexual relationship.

Because some of the texts suggested that Tessa might be a minor, by – for example – discussing her sneaking away from her "mum" to meet Kyle, ICE began to investigate Tessa's age. ICE located a Facebook page for "Tessa Van Vlerah" in St. Louis, Missouri, and printed it out for the case agent. The case agent noted that the woman pictured on the Facebook page, and the baby she was holding, were featured in some of the child pornography images on Kyle'slaptop. ICE immediately contacted local law enforcement in St. Louis to have Tessa arrested, and to take the baby into protective custody.

C.     The Sexual Abuse of Tessa's Daughter.

Kyle's computer contains several dozen images of graphic sex involving Tessa, her infant daughter, and an adult male whose face is not shown in the images. The infant is forced to orally copulate the adult male penis in several of these images. Kyle's laptop also contains a transcript of chats between an

11

individual named "cruelsadisticbastard" and an individual named "thelmanlouise87." In these chats, which took place on February 10, 2010, "cruelsadisticbastard" discusses with "thelmanlouise87" his desire to have sex with Tessa's baby. ICE identified "cruelsadisticbastard" as Kyle based on a text message sent from Kyle's phone dated March 1, 2008 in which he tells someone to email pictures to him at the email address "cruelsadisticbastard@yahoo.com."

After local police had arrested Tessa, she gave Mirandized, recorded statements to ICE agents and local police. In the statements, Tessa acknowledged that she and Kyle had a sexual relationship that had lasted for about a year, that they had met in a fetish chat room relating to pedophilia, and that she had [sic] Kyle had both molested her daughter and that Kyle had taken the pictures of the molestation that were on Kyle's laptop. Tessa described how Kyle had told Tessa that he loved her and that he was only sexually interested in her, and then had turned his sexual attention to the baby, who was born in February 2009.

Tessa stated that Kyle would visit her every few months, that he would take her to a hotel room where they would have sex and molest the baby, and that he would photograph the abuse with a small red digital camera. Kyle apparently emailed pictures of the abuse to Tessa, but the United States has found no evidence that Kyle distributed the pictures to the world at large." ER 78-80.

12

## VII.  Summary of the Argument

Based on his miscalculation of the Sentencing Guidelines, the district judge rejected the original plea agreement that called for a 30-year sentence.  Thereafter, the district judge injected himself into the parties' plea negotiations by announcing his intent to impose a life sentence upon any trial conviction.  In so doing, the district judge transgressed the well-established "bright-line rule" forbidding judicial comment on plea negotiations, and coerced Mr. Kyle to enter a far harsher plea agreement with the Government as the sole means to avoid the jurist's stated ends.  As a result, this Court should enforce the remedy dictated by its seminal opinion in *United States v. Bruce*, 976 F.2d 552 (9th Cir. 1992) and should remand the matter so that Mr. Kyle may have the option of withdrawing his plea of guilty and pleading anew.  In addition, this case fits within the narrow band of cases that warrants remand to a different district judge pursuant to 28 U.S.C. § 2106, and Mr. Kyle requests that relief.

Mr. Kyle also assigns error to the district judge's expressed wish that Mr. Kyle "not survive in prison[,]" a powerfully troubling statement that amounted to a desire for Mr. Kyle to meet with an unfortunate end while held in federal custody. In voicing that wish, the district judge betrayed a deep-seated antagonism against Mr. Kyle that rendered fair judgment impossible.  That extreme view makes this

13

the exceptional case that requires judicial recusal based on prejudice or bias arising from a jurist's role in presiding over a cause, pursuant to *Liteky v. United States*, 510 U.S. 540 (1994).

Third, the 450-month sentence Mr. Kyle is serving arises from a manifest miscalculation of Sentencing Guidelines, which in fact, the district court never assessed in any meaningful way. Instead of receiving the benefit of his bargain that called for a substantially-above Guidelines sentence of 30 years, the district court's plain miscalculation of the Guidelines led to a sentence that district court believed amounted to no more than a minor upward variance. At a minimum, this significant procedural error should be corrected on appeal and Mr. Kyle should be afforded resentencing on remand.

Finally, Mr. Kyle contends that based on the facts of this case, and as compared to the advisory Guidelines and the typical 30-year punishment for sexual abuse of minors, the district court's sentence of 450 months was itself substantively unreasonable, and vacatur and remand for resentencing is required in any event.

14

## VIII.  Argument

**A.    The appellate waiver in the parties' plea agreement is unenforceable, and even if it was enforceable, it should not be under the facts of this case and this Court's precedent.**

**1.    Standard of review.**

The Government may challenge this appeal based upon the appellate waiver contained in Mr. Kyle's plea agreement.  ER 60.  "Waiver of a statutory right to appeal is reviewed *de novo*."  *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996).[4]

**2.    Discussion.**

**a.    The Government's breach of the proffer agreement defeats any enforcement of the appellate waiver.**

"Pre-trial agreements, such as cooperation agreements and proffer agreements, are interpreted according to principles of contract law."  *United States*

---

[4]Should the Government present an argument of waiver despite his claim of breach and his reliance on *United States v. Jacobo Castillo*, 496 F.3d 947, 949-950 (9th Cir. 2007) (en banc), Mr. Kyle contends that any appellate waiver cannot in any case be enforced against his claim that the district court violated Rule 11. *See* Part VIII.B, *infra*.  That judicial intrusion tainted the proceedings and rendered the subsequent plea (and appellate waiver) involuntary and ineffective.  *See United States v. Gonzalez-Melchor*, 648 F.3d 959, 962-65 (9th Cir. 2011) (holding appellate waiver following judicial violation of Rule 11 to be "invalid and unenforceable"); *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) ("An appeal waiver will not apply if . . . the defendant's guilty plea failed to comply with Fed. R. Crim. P. 11").

*v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991) citing, *inter alia*, *Santobello v. New York*, 404 U.S. 257, 262-63 (1971). "[T]he waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement." *Baramdyka*, 95 F.3d at 843; *see also United States v. Gonzalez*, 16 F.3d 985, 990 (9th Cir. 1993) (the Government's breach of its sentencing agreement renders defendant's appellate waiver unenforceable).

Beginning with *Santobello*, and continuing through a trio of cases issued earlier this year—*United States v. Alcala-Sanchez*, 666 F.3d 571 (9th Cir. 2012); *United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012), and *United States v. Manzo*, 675 F.3d 1204 (9th Cir. 2012)—the Supreme Court and this Court have made plain that when the Government commits itself to a course of conduct at a sentencing hearing, it *must* meet that obligation faithfully and fully, or face vacatur and remand to a different district judge.

In *Santobello*, the State secured the defendant's guilty plea by, *inter alia*, agreeing "that no sentence recommendation would be made by the prosecutor." 404 U.S. at 499. After the case was transferred to a new prosecutor, he argued for a sentence. *Id*. at 497. Turning aside defense counsel's claim of breach, the trial judge assured he was "not at all influenced by what the [prosecutor] says," before following the Government's recommendation. *Id*.

16

The Supreme Court reversed and remanded the matter for resentencing before a different judge. "[T]he interests of justice" required vacatur and remand based upon "the duties of the prosecution made in [plea] negotiations[.]" *Id*. at 499. The Court also held as immaterial as a matter of law both (1) the sentencing judge's assurances that the breach did not affect him, and (2) the inadvertence of any breach. *Id*.

Just this year, this Court corrected similar breaches in three published opinions: *Alcala-Sanchez*, *Manzo*, and *Whitney*. This trilogy emphasizes the importance of the Government's obligations to fulfill its promises, and demonstrates the Government's shortcoming here. Most simply, an agreement between the Government and a defendant is construed like a contract, "and the government is held to its literal terms." *Manzo*, 675 F.3d at 1210; *Alcala-Sanchez*, 666 F.3d at 575. Upon entering an agreement, the Government obtains the obligation "of performing as promised." *Manzo*, 675 F.3d at 1211. Thus, the Court compares the Government's obligations to its conduct. *Whitney*, 673 F.3d at 970. It does not matter why the breach occurred; the Government must "present a united front to the court." *Alcala-Sanchez*, 666 F.3d at 575-76 (internal quotations and citation omitted).

17

*Whitney* tracks most closely to this case.  There, the prosecution "agreed not to use any of Whitney's information supplied during his debriefing for sentencing purposes."  *Whitney*, 673 F.3d at 970 (brackets and ellipses omitted).  Nevertheless, at sentencing, the prosecutor informed "the court that Whitney 'supplied information to her during his debriefing session that put him in a supervisory role.'"  *Id*. (brackets omitted).  The Court found the Government "in clear breach" of its agreement.  *Id*.

Here, "[a]s a precondition to his plea agreement, [Mr. Kyle] gave law enforcement a proffer[.]"  ER 82.  The Government agreed it would not offer "any statements made by [Mr. Kyle] at the [proffer] meeting . . . at sentencing."  ER 158.  The case agent broke this promise then he informed the investigating probation officer that Mr. Kyle proffered the name of his "mentor," to whom Mr. Kyle admitted distributing child pornography.  PSR ¶¶ 19, 26, 29.  The case agent's presentation of Mr. Kyle's confidential proffer breached the Government's agreements with Mr. Kyle.

By standing in breach, the Government may not enforce any appellate waiver against Mr. Kyle.  *See Baramdyka*, 95 F.3d at 843; *Gonzalez*, 16 F.3d at 990.

18

**b.    Refusal to exercise jurisdiction over this appeal would work a miscarriage of justice.**

In *Jacobo Castillo*, eleven members of the *en banc* Court determined that the Court maintains jurisdiction to hear an appeal, even where a defendant expressly waived that right. 496 F.3d at 949-950. Putting aside the exceptions to waiver identified in *Gonzalez* and *Bibler*, the Court held that—upon the Government's showing of a valid, enforceable waiver—it "will not exercise that jurisdiction to review the merits of a defendant's appeal if we conclude that [he] knowingly and voluntarily waived that right to appeal unless the result would work a miscarriage of justice." *Jacobo Castillo*, 496 F.3d at 957; *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir. 2011) (same).

As shall be presented below, the district judge (1) intruded upon plea negotiations by announcing his intent to impose a life sentence upon any trial conviction, (2) determined the appropriate sentence based upon a materially flawed Guidelines analysis, (3) betrayed a troubling antagonism against Mr. Kyle, and then (4) imposed a substantively unreasonable sentence out of line with nearly every other court to confront one of these difficult cases. *See infra*., Parts VIII.B-E. As presented below, even without the Government's breach, this Court should exercise its jurisdiction to review the merits pursuant to *Jacobo Castillo.*

19

**B.    The district judge preannounced his intended sentence in violation of Rule 11.**

### 1.    Standard of Review.

"A district court's failure to comply with the provisions of Rule 11(e)(1) *is* plain error even if the error is identified for the first time on appeal." *Bruce*, 976 F.2d at 554 (emphasis added).  Although *Bruce* addressed a prior version of Rule 11, that version "contains [the same] clear command: the court shall not participate in any plea discussions." *Id.* (brackets omitted).  "The duty to abide th[is] rule does not arise as a result of any motion made by the defendant; rather, the court is bound by the Rule's restrictions." *Id.*  Determining whether or not a district court's on-the-record comments violated Rule 11 presents "a purely legal question that [the Court] review[s] *de novo*." *Id.* at 555.  "[A] defendant who has pled guilty after the judge has participated in plea discussions should be allowed to replead, without having to show that actual prejudice has resulted from the participation." *Id.* at 558 (quotation marks omitted).

### 2.    Discussion.

Federal Rule of Criminal Procedure 11 prohibits district courts from participating in plea discussions.  "This Circuit has interpreted Rule 11 as a 'bright-line rule' prohibiting 'all forms of judicial participation' before the parties

20

have reached a plea agreement and disclosed the final agreement in open court."
*United States v. Garfield*, 987 F.2d 1424, 1426  (9th Cir. 1993).  "The rationale
behind this blanket prohibition is threefold: (1) it ensures that no defendant is
coerced into pleading guilty; (2) it protects the integrity of the courts; and (3) it
preserves the judge's impartiality after plea negotiations are completed." *Id*. at
1426-27.  Based upon Rule 11's "unambiguous mandate[—which] prohibits the
participation of the judge in plea negotiations under *any* circumstances[—]it is a
rule that . . . admits of no exceptions."  *Bruce*, 976 F.2d at 558 (emphasis in
original); *see also Garfield*, 987 F.2d at 1426-27 (same).

This strict prohibition reaches "any discussion or communication regarding
the sentence to be imposed prior to the entry of a plea of guilty or conviction, or
submission to him of a plea agreement." *Id.* at 556 (quotation marks and brackets
omitted, emphasis in original).  In sum, Rule 11 "simply commands that the judge
not participate in, and remove him or herself from, any discussion of a plea
agreement that has not yet been agreed to by the parties in open court." *Id.*

In this case, the district judge violated Rule 11.  At the first calling of the
case following the rejection of the original plea agreement, the district judge set a
trial date, after which he announced his intent to impose a life sentence upon any
trial conviction:

> [T]he court's view is that this man is never going to get out of jail, period.  So telling me that you're going to submit an evaluation of an actuary doesn't really help me because, quite frankly, given what I know about this case, I'm prepared to impose a life sentence.

ER 42.  The judge then declared: "if this man is out of jail at any time during the lifetime of this child, I think it's a very deleterious fact for this victim child."  ER 45.  Most directly, the district judge told Mr. Kyle that any post-trial conviction would result in a life sentence.[5]

The district judge's preannouncement of sentence violated Rule 11.  And although Mr. Kyle need not show prejudice from this violation to obtain relief, *see Bruce*, 976 F.3d at 558, Mr. Kyle readily makes that showing here.  In brief, upon receiving notice of the district judge's intention to impose a life sentence upon any trial conviction, Mr. Kyle's need to obtain the Government's agreement on *any* proposed sentence providing for less than the statutory maximum of life imprisonment, even if illusory, became paramount.  At the same time, Mr. Kyle's bargaining position with the Government was eviscerated, because the judge's

---

[5]The district judge later confirmed this intent when stating, upon sentencing Mr. Kyle:

> [T]he only reason I'm agreeing to the sentence that's been agreed to by you and the Government is because of what the Government states, is sparing the child *the trial that I originally ordered in this case, so that you could have a life sentence*.

ER 30-31 (emphases added).

comments "effectively threw the weight of the court behind the prosecution." *United States v. Anderson*, 993 F.3d 1435, 1439 (9th Cir. 1993).

Most basically, the district court transgressed this Court's admonition that it "should take no part *whatever* in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement." *Bruce*, 976 F.2d at 556 (original emphases).

Indeed, this case is like *Bruce*. There, the district court was found to have plainly violated Rule 11 when he admonished the defendants to "[t]hink carefully about" the Government's 42-month plea offer in a case that carried a life-cap upon conviction. *Id*. at 555-558 & nn.2, 3. This Court found that the district "judge's comments here clearly indicate his support of the proposed plea agreement and his belief that accepting it would be in the defendant's best interests[,]" in violation of Rule 11. *Id*. at 556 n.2.[6]

So too, it is like *Anderson*. There, this Court vacated the defendant's conviction because the district court declared that following the trial setting, it

---

[6]*Bruce* also took care to emphasize that "[w]hile [the district court's expressed preference] make the violation in the present case all the more clear, it is entirely unnecessary to our result: Rule 11 explicitly bans *all* judicial participation in plea discussions, not merely participation that suggests that the judge is in favor of the proposed agreement." *Id*. (original emphasis).

23

would only accept a plea of guilty to all counts. 993 F.2d at 1436-39. *Anderson* held that "[a]lthough the district judge's comments in th[at] case did not directly address Anderson's decision whether to plead guilty, they were more obviously coercive than those we found unacceptable in *Bruce* since they effectively threw the weight of the court behind the prosecution." *Id.* at 1439.

Here, the district judge's announced intent to impose a life sentence upon trial conviction were even more coercive, and actually required Mr. Kyle to pursue and then accept *any* plea agreement that would permit him to obtain *any* sentence less than life imprisonment. The Court should thus apply the remedy set forth in *Bruce*: the vacatur of his conviction and the opportunity to withdraw his guilty plea upon remand. *Bruce*, 976 F.2d at 558.

Given the nature of this violation at bar, Mr. Kyle further requests the Court to remand the matter to a different district judge. *See* 28 U.S.C. § 2106; *Liteky*, 510 U.S. at 554. "In the absence of personal bias, [this Court] assign[s] a case to a new judge on remand only in 'unusual circumstances.'" *Earp v. Cullen*, 623 F.3d 1065, 1071 (9th Cir. 2010). Even putting aside Mr. Kyle's contentions about the trial judge's expressed bias, *see infra*, Part VIII.C, Mr. Kyle respectfully contends that this case presents the requisite unusual circumstances.

24

To make a determination that unusual circumstances exist, this Court considers whether:

> [1] the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected; [2] reassignment is advisable to preserve the appearance of justice; and [3] reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 1071-72 (citations omitted).

The Rule 11 violation, either alone or in conjunction with the district judges's antagonistic comments about Mr. Kyle and/or the 450-month sentence actually imposed, supports the conclusion that the district judge would have, upon remand, substantial difficulty in putting out of his mind his previously-expressed views about this case, and reassignment would preserve the appearance of justice. Similarly, given the limited nature of the prior litigation before the district court, reassignment would not entail waste or duplication of effort out of proportion to the important ends to be served by reassignment.

25

**C.    The district judge's comments about appellant betrayed a deep-seated antagonism that rendered fair judgment impossible.**

**1.    Introduction and standard of review.**

The district judge should have disqualified himself pursuant to the Due Process Clause of the Fifth Amendment and 28 U.S.C. § 455.  That statute requires a judge's *sua sponte* removal from a case based on personal bias.  28 U.S.C. § 455(a) & (b)(1).  Usually, an appellant's failure to challenge below the district judge's decision not to recuse himself results in plain error review.  *United States v. Bosch*, 951 F.2d 1546, 1548 (9th Cir. 1991).  Nevertheless, because the district court did not fully reveal its deep-seated antagonism sufficient to sustain this claim until the moment it imposed sentence, *see* ER 30-31, Mr. Kyle's failure to object at that moment may be excused under the futility doctrine, *see United States v. Esquivel-Ortega*, 484 F.3d 1221, 1225 (9th Cir. 2007), and the Court should review this claim for an abuse of discretion.  *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010).

**2.    Discussion.**

In *Liteky*, the Supreme Court addressed the circumstances which would require a judicial officer to "disqualify himself" from presiding over a matter, and clarified the meaning and limits of the "extrajudicial source" doctrine.  510 U.S. at

26

543-555.  The Court held that "predispositions developed during the course of a trial will sometimes (albeit rarely) suffic[iently]" meet the standard of "bias or prejudice" requiring judicial recusal.  *Id.* at 554.  Mr. Kyle presents one of those rare cases.

The Supreme Court explained that while many disqualifying opinions may derive from an "extrajudicial source[,]" that circumstance does *not* present:

> the *only* basis for establishing disqualifying bias or prejudice.  It is only the *common* basis, but not the exclusive one, since it is not the *exclusive* reason a predisposition can be wrongful or inappropriate.  A favorable or unfavorable disposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display a clear inability to render fair judgment.

*Id.* at 551 (original emphases).  The Supreme Court later expanded on this key exception, holding:

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 555 (original emphases).  The district judge's comments show this to be an

27

exceptional case as *Liteky* recognized, for the judge's comments amounted to such a high degree of antagonism as to make fair judgment impossible.

When the district judge told Mr. Kyle "I hope that you don't survive in prison" followed by a recommendation that the Bureau of Prisons house Mr. Kyle in a maximum-security institution, *see* ER 30-31, the district judge betrayed a deep-seated antagonism that rendered fair judgment impossible. Voicing a desire for Mr. Kyle to meet with an unfortunate end during his incarceration amounts to extreme bias and partiality that is forbidden by the Fifth Amendment and by statute. This Court now applies an objective standard to those comments and asks whether, based on the jurist's statements, "his impartiality might reasonably be questioned[?]" *Liteky*, 510 U.S. at 548. On this record, Mr. Kyle respectfully argues this Court must answer the question with a definitive "Yes." As a result, the Court should at least vacate Mr. Kyle's sentence and remand for resentencing by a different district judge.

**D.    The district court plainly erred when it calculated the advisory Guidelines to recommend a sentence of 324-405 months.**

**1.    Introduction and standard of review.**

The purpose of appellate review of a sentence is to determine whether the sentence is procedurally and substantively reasonable. *United States v. Carty*, 520

28

F.3d 984, 993 (9th Cir. 2008) (en banc). This Court first considers "whether the district court committed significant procedural error," including whether it incorrectly calculated the applicable Guidelines and whether it selected a sentence "based on clearly erroneous facts." *Id.* "[P]rocedural errors in determining the correct sentencing range are generally prejudicial and require reversal[.]" *United States v. Vasquez-Cruz*, --- F.3d ----, 2012 WL 3743167 (9th Cir. 2012); *see also United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011) (same).

The Court considers the substantive reasonableness of the sentence by assessing the totality of the circumstances, including the factors set forth in 18 U.S.C. § 3553(a). *United States v. Crowe*, 563 F.3d 969, 977 (9th Cir. 2009). This Court reviews "the district court's interpretation of the Guidelines *de novo*, its application of the Guidelines to the facts for an abuse of discretion, and its factual findings for clear error." *Crowe*, 563 F.3d at 977. In assessing substantive reasonableness, "the abuse of discretion standard applies." *Id.*

Where, as here, no objection was raised below, this Court reviews for plain error. *See United States v. Rendon-Duarte*, 490 F.3d 1142, 1146 (9th Cir. 2007). Plain error is: "(1) error, (2) that is plain, (3) and that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citation and internal quotations omitted). "If all three conditions are met, an appellate court may then

29

exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

**2.    Discussion.**

**a.    The Guidelines properly calculated.**

As a general rule, section 2241(c) violations are sentenced pursuant to Guidelines section 2A3.1.  *See* USSG, Appendix A.   Properly calculated, the Guidelines advised a sentence based on a Total Offense Level of 35, as follows:

| Description | +/- | Authority |
|---|---|---|
| Base offense level | 38 | USSG § 2A3.1 |
| Acceptance of responsibility | -3 | USSG § 3E1.1(a)-(b) |
| **Total** | **35** | |

Because, as was undisputed, Mr. Kyle lacked any criminal history, *see* PSR ¶¶ 62-64, the Sentencing Guidelines advised a sentence of 168-210 months, far below the 30-year mandatory minimum compelled by statute.  USSG, Sentencing Table; 18 U.S.C. § 2241(c).

**b.    The first incorrect Guidelines calculation.**

The first incorrect calculation of the Sentencing Guidelines was presented through the May 26, 2011 plea agreement, which miscalculated the applicable Guidelines as follows:

30

| Description | +/- | Authority |
|---|---|---|
| Base offense level | 38 | USSG § 2A3.1 |
| Use of a computer | +2 | USSG § 2A3.1(b)(6) |
| Vulnerable victim | +2 | USSG § 3A1.1(b)(1) |
| Acceptance of responsibility | -3 | USSG § 3E1.1(a)-(b) |
| **Total** | **39** | |

In Criminal History Category I, this incorrect Total Offense Level advised a sentence of 262-327 months. The low-end of this recommendation was thus eight years below the mandatory minimum 30, and the high-end was nearly three years less. But neither of the two proffered upward adjustments properly applied.

### i.    Mr. Kyle did not "use a computer" within the meaning of USSG § 2A3.1.

The "use of a computer" enhancement did not apply. Under USSG § 2A.3.1, a defendant's offense level should be increased by two levels:

> [i]f, *to persuade, induce, entice, or coerce* a minor to engage in prohibited sexual conduct, or if, *to facilitate transportation or travel*, by a minor or a participant, to engage in prohibited sexual conduct, the offense involved . . . (B) the use of a computer or interactive computer service[.]

As set forth in the Application Notes, this "enhancement [does] not apply to the use of a computer or interactive computer service to obtain airline tickets[.]" USSG § 2A3.1, Appl. Note 4(B). Rather, the computer must be used "to

31

communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." *Id.*

Obviously, the first clause does not apply, for the victim never used a computer in any manner, and thus was not induced, enticed, or coerced by any use of a computer. Similarly, the record is devoid of evidence that Mr. Kyle communicated by computer with the minor's mother "to facilitate transportation or travel" for participation in the offense conduct. *See* PSR ¶¶ 8-29.

The only court of which Mr. Kyle is aware to have interpreted this provision is the Tenth Circuit, albeit addressing a prior version. *United States v. Robertson*, 350 F.3d 1109, 1114 (10th Cir. 2003).[7] *Robertson* held that "[t]his subsection applies when four conditions are met: (1) a computer or an Internet-access device must be used, (2) to facilitate transportation or travel, (3) by either a victim or a participant, (4) for the purpose of engaging in prohibited sexual conduct." *Id.*[8]

---

[7]The version under consideration in *Robertson* "impose[d] a two-level sentence enhancement '[i]f a computer or an Internet-access device was used to ... (B) facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct.'" *Id.*

[8]*See also United States v. McGraw*, 351 F.3d 443, 445 (10th Cir. 2003) ("Section 2A3.2(b)(3)(B) of the Guidelines provides a two-point enhancement if the defendant uses 'a computer or Internet-access device to facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct'") (ellipses omitted)

The record does not support its application here.  PSR ¶¶ 8-29.

Courts have also interpreted a similarly-worded Guidelines adjustment—USSG § 2G1.1(b)(3)—in the same, obvious manner Mr. Kyle presents here.  *See United States v. Jass*, 569 F.3d 47, 53, 65-69 (2d Cir. 2009) (enhancement applicable to the "use of a computer to solicit participation with a minor in sexually explicit conduct" could not be properly applied to use of a computer for "solicitation *of* a minor but, rather, was intended to apply to solicitation of a third party's participation in sexually explicit conduct *with* a minor") (emphasis in original);[9] *United States v. Reaves*, 253 F.3d 1201, 1204-05 (10th Cir. 2001) (upholding application of enhancement addressing where "a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purposes of producing sexually explicit material where defendant "us[ed] a computer to solicit his victims' participation in sexual conduct").

---

[9]The 2004 version of USSG § 2G2.1(b)(3) applicable in *Jass* read, in the pertinent part, as follows:

> If, for the purposes of producing sexually explicit material, the offense involved . . . (B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicitly conduct, or to otherwise solicit participation by the minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by 2 levels.

*Jass*, 569 F.3d at 66.

In sum, the bare fact that Mr. Kyle emailed with Vlerah was insufficient to make this enhancement applicable. On the facts before the district court, the application of this two-level enhancement was inconsistent with the Guidelines section and application note and was plainly erroneous.

### ii.     The "vulnerable victim" enhancement did not apply.

Where "the defendant knew or should have known that a victim of the offense was a vulnerable victim," the district court adds a two point adjustment. USSG § 3A1.1. This enhancement does *not* apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons *unrelated to age*." *Id.*, Appl. Note 2 (emphases added); *see also United States v. Nielsen*, — F.3d —, 2012 WL 3983770, *2 (9th Cir. 2012) ("[A]pplication of the 'vulnerable victim' adjustment is not appropriate if the factor that makes the person a vulnerable victim is incorporated in the offense guideline.") (second internal quotation marks and citation omitted).

In this case, Guidelines section 2A3.1 included the vulnerability of the victim based on her age to assign Mr. Kyle 38 base offense level points rather than 30 points. More specifically, section 2241(c) addresses sexual abuse cases

34

involving children younger than 12, and assesses 38 base points due to the

vulnerable age of those persons; in contrast, section 2A3.1 assigns 30 base points

to individuals guilty of sexual abuse by force or threat or against those in custody,

and then permits enhancements based on the victim's age, if applicable. *See*

USSG § 2A3.1(a)(2) & (b)(2); *see also United States v. Archdale,* 229 F.3d 861,

869 & n.5 (9th Cir. 2000) (vulnerable victim enhancement does *not* apply where

application of USSG § 2A3.1 accounts for vulnerability based on victim's age).

Because the Guidelines increased Mr. Kyle's advisory sentence by eight points

based on the victim's vulnerable age, the district court incorrectly added another

two-point enhancement based on that same factor.

### c.  The second incorrect Guidelines calculation.

Compounding the problems arising from the first miscalculation of the

Sentencing Guidelines, probation argued that USSG § 2A1.3 did not apply at all,

and instead urged the Court to calculate the advisory sentence pursuant to USSG §

2G2.1(a) based on the cross-reference presented in USSG § 2A3.1(c)(2).  PSR ¶

46.  As a result, the probation office miscalculated the advisory Guidelines as

follows:

35

| Description | +/- | Authority |
|---|---|---|
| Base offense level | 32 | USSG § 2G2.1(a) |
| Minor victim < 12 | +4 | USSG § 2G1.3(b)(2) |
| Commission of sexual act | +2 | USSG § 2G2.1(b)(2)(A) |
| Images sent to other(s) | +2 | USSG § 2G2.1(b)(3) |
| Use of a computer | +2 | USSG § 2G2.1(b)(6) |
| Vulnerable victim adjustment | +2 | USSG § 3A1.1(b)(1) |
| Acceptance of responsibility | -3 | USSG § 3E1.1(a)-(b) |
| **Total** | **41** | |

*See* PSR ¶¶ 46-57.  Under these calculations, probation asserted an advisory

Guidelines sentence of 324-405 months.  Thereafter, the parties and the district

court adopted this incorrect calculation of the Guidelines.  *See* ER 14, 61.  These

calculations of the Sentencing Guidelines were plainly erroneous.

### i.    The cross-reference in USSG § 2A3.1(c)(2) did not apply to this case.

The district court plainly erred when it determined that the cross-reference

presented in USSG § 2A3.1(c)(2) applied to this case.  That cross-reference reads

as follows:

> If the offense involved *causing*, transporting, permitting, or offering
> or seeking by notice or advertisement, *a minor to engage in sexually
> explicit conduct for the purposes of producing a visual depiction* of
> such conduct, apply § 2G2.1 (Sexually Exploiting a Minor by
> Production of Sexually Explicit Visual or Printed Material; Custodian

36

> Permitting Minor to Engage in Sexually Explicit Conduct;
> Advertisement of Minors to Engage in Production), if the resulting
> offense level is greater than that determined [pursuant to USSG §
> 2A3.1].

USSG § 2A3.1(c)(2) (emphases added).

"The decision to apply a guideline cross-referenced within another guideline is fact-dependent." *United States v. Morgan*, 164 F.3d 1235, 1238 (9th Cir. 1998). "Thus, the fact-dependent inquiry focuses on determining whether the acts [Mr. Kyle] committed constitute" causing a minor to engage in "sexually explicit conduct *for the purposes of* producing a visual depiction of such conduct." *Id.*; USSG § 2A3.1(c)(2) (emphasis added).

The facts of this case do not support that conclusion. Rather, the record demonstrates that Mr. Kyle's misconduct was focused on the abuse of the child and *not* focused on the production of visual materials. *See e.g.*, ER 80 (USA's Sentencing Memorandum) ("Kyle apparently emailed pictures of the abuse to Tessa, but the United States has found no evidence that Kyle distributed the pictures to the world at large"); *see also* PSR ¶¶ 17-29. Most bluntly, the facts demonstrate that Mr. Kyle's animus was the abuse itself—thus making him liable for that abuse under the applicable Guideline § 2A3.1—and his incidental

37

photographing of those acts does not alter his conduct to one motivated by abuse to one motivated by production of sexually explicit materials.

Moreover, even if the cross-reference could properly apply to this case, the "use of a computer" and "vulnerable victim" enhancements would not apply for the same reasons discussed above. *See supra.*, Part VIII.D.2.b. Thus, even under the cross-reference, the Guidelines properly calculated would result in a Total Offense Level of 37 and advise a sentence of 210-262 months, far below the district court's erroneous calculation.

### d. The remaining factors of the plain error test are met here.

The district court committed procedural error by incorrectly applying the section 2A3.1(c)(2) cross-reference and when arriving at a Total Offense Level of 41 instead of 35. These errors increased Mr. Kyle's advisory guideline range from a range of 168-210 months to 324-405 months. Those calculations were plainly erroneous, satisfying the first two prongs of the plain error test.

On these facts, Mr. Kyle meets the third and fourth prongs of the plain error test as well. The district court made itself abundantly clear that, in its view:

> this is a case that does not warrant a guideline sentence. It warrants an above-guideline sentence, substantially above-guidelines sentence[.]

ER 71-72. But the district court then miscalculated the Guidelines such that the

38

original 30-year sentence urged by the parties—which was in fact a "substantially above-guidelines sentence"—was taken of the table because the court did not recognize that it was in fact a "substantially above-guidelines sentence."

The Court should thus conclude that these errors affected Mr. Kyle's substantial rights and seriously affected the "public reputation of judicial proceedings[.]"  *See United States v. Hammons*, 558 F.3d 1100, 1105-06 (9th Cir. 2009) (finding the district court's erroneous guideline calculation to be plain error, even though the sentence imposed fell within the appropriate guideline range, because the erroneous guideline determination "could easily have affected Hammons's substantial rights and led the district court to impose an additional one month of imprisonment").

For these reasons, the Court should exercise its discretion and notice the district court's plain error.  At a minimum, the Court should vacate Mr. Kyle's sentence and remand for resentencing.

## E.    The 450-month sentence is substantively unreasonable.

### 1.    Introduction and standard of review.

The Court should also vacate Mr. Kyle's sentence on the ground that it is substantively unreasonable.  As discussed, the applicable Sentencing Guidelines, properly calculated, advised a sentence of 168-210 months, making the imposed

39

sentence nearly three times as high as the low end, and more than twice as long as the top end of the advisory Guidelines.  The district court then imposed a sentence that is, for all practical purposes, a life sentence, an unfair outcome at odds with purposes of punishment and the section 3553(a) factors, and therefore substantively unreasonable.

This Court reviews the substantive reasonableness of a sentence for an abuse of discretion.  *Crowe*, 563 F.3d at 977.  "The abuse of discretion standard is deferential, but it does not mean anything goes."  *United States v. Ressam*, 679 F.3d 1069, 1087 (9th Cir. 2012) (en banc).  "To support a conclusion that the sentence was substantively unreasonable," this Court "may reverse if, upon reviewing the record, [it has] a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors."  *Id*. (internal quotations and citation omitted).  Such an evaluation is "highly contextual and do[es] not permit easy repetition in successive cases."  *Id*. at 1088.

## 2.    Discussion.

### a.    The appropriateness of the 30-year minimum sentence.

In the Statement of the Case, Mr. Kyle presented verbatim the Government's eloquent argument regarding the appropriateness of a 30-year

40

sentence in this case.  *See supra.*, Part V.  Nothing about Mr. Kyle and his misconduct changed since that persuasive presentation.[10]  This Court should thus should accept the Government's presentation regarding the appropriateness of a 30-year sentence.

### b.    The history and characteristics of Kenneth Kyle.

Similarly, the terms of the original plea agreement inform the history and characteristics of Mr. Kyle.  *See* 18 U.S.C. § 3553(a)(1).  As demonstrated by the terms of that initial agreement, neither party believed that Mr. Kyle's history and characteristics warranted a sentence of 450 months.  Nothing about Mr. Kyle's history and characteristics changed between the time of the first agreement and the sentencing hearing.

Examination of Mr. Kyle's history and characteristics confirm this conclusion.  Born into a family that presented great dysfunction, Mr. Kyle was raised by an abusive, alcoholic father and clinically-depressed mother.   ER 85; PSR ¶ 69; *see also* ER 91-93 (Assessment by Stewart B. Nixon, Ph.D. and Pat Potter McAndrews, M.A.).  In turn, Mr. Kyle has battled with depression all his life, which included a suicide attempt and repeated suicidal ideation, a significant

---

[10]Rather, the only change was the district court's announcement of its intention to impose a life sentence upon any trial conviction.

41

factor that contributed to the crime of conviction.  ER 85; PSR ¶¶ 79-80.

Nevertheless, Mr. Kyle was able to succeed academically, earning a Ph.D. and

becoming an assistant professor at California State University (East Bay).  PSR ¶¶

85, 87.  The 13 letters of support provided to the district court depict a caring and

thoughtful man who—despite the crime of conviction—has done a great amount

of good with his life.  *See* ER 94-117.  And perhaps most importantly, Mr. Kyle

was evaluated by two mental health professionals who concluded that he is

amenable to treatment, a circumstance that suggests Mr. Kyle would not be likely

to re-offend upon his release from custody.  *See* ER 91-93.

> c.  **The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The initial agreement also demonstrates that a sentence of 450 months does

not accurately reflect the seriousness of the offense, the need to promote respect

for the law, and to provide just punishment for the offense.  *See* 18 U.S.C. §

3553(a)(2)(A).  Mr. Kyle will not belabor the points made above, but it bears

repeating that prior the district court's injection into the plea discussions, the

Government maintained that a 30-year sentence would adequately reflect the

seriousness of the offense and punish the offense conduct.

### d.     The need for the sentence to afford adequate deterrence to criminal conduct.

The 450-month sentence—as opposed to the 30-year sentence originally agreed upon—was not necessary to deter future criminal conduct, whether by Mr. Kyle or anyone else.  *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Juvenile No. 1 (LWQ),* 38 F.3d 470, 472 (9th Cir. 1994) (noting that section 3553(a)(2)(B) addresses both specific and general deterrence).

*First*, as to Mr. Kyle, a 30-year sentence itself would have been a life changing event, and would have deterred future misconduct.  Prior to this case, Mr. Kyle had no criminal history whatsoever.  PSR ¶¶ 62-64.  A 30-year sentence is severe, and itself would have ensured Mr. Kyle's incarceration for nearly the rest of his adult life and certainly would have sent a clear message that the conduct of conviction was unacceptable and not to be repeated.  Under these circumstances, increasing Mr. Kyle's sentence an additional eight years added nothing to this deterrent effect, and the sentence was therefore unreasonable.

*Second*, a 30-year term of imprisonment would have also advanced the purpose of general deterrence.  No person, regardless of his criminal history, would (or could) take lightly the prospect of spending 30 years in federal prison.

The additional 90 months imposed by the district court did nothing to enhance that result.

> **e.     The need for the sentence to protect the public from further crimes of the defendant**.

The proposed 30-year sentence also belies any contention that a sentence of 450-months was necessary to protect the public from Mr. Kyle.  *See* 18 U.S.C. § 3553(a)(2)(C).  Under the terms of the original agreement, Mr. Kyle would have been imprisoned until his late 70s.  This term of incapacitation—followed by an evaluation for further civil incapacitation pursuant to 18 U.S.C. 4248—sufficiently ensured the public's safety.  The addition of nearly eight extra years to Mr. Kyle's sentence did nothing to change that result.

> **f.     The need to avoid unwarranted sentence disparities.**

The district court's sentence also resulted in unwarranted sentencing disparity.  *See* 18 U.S.C. § 3553(a)(6).  This Court has opined that "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007) (quotation marks omitted). The sentence imposed on Mr. Kyle is unusually harsh on this scale.

44

With one possible exception,[11] Mr. Kyle has found no case in the Ninth

Circuit in which a violator of 18 U.S.C. § 2241(c) received as harsh a sentence:[12]

- *United States v. Little Owl*, 475 Fed.Appx. 185 (9th Cir. 2012) (affirming 168–month sentence for aggravated sexual assault in violation of 18 U.S.C. §§ 1153(a) and 2241(c));

- *United States v. Hisbadhorse*, 474 Fed.Appx. 533 (9th Cir. 2012) (affirming 360-month sentence for aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153(a), 2241(c), and abusive sexual contact, in violation of §§ 1153(a), 2244(a)(5));

- *United States v. Yarlott*, 438 Fed.Appx. 568 (9th Cir. 2011) (affirming 400-month sentence for aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153(a) and 2241(c));

---

[11]*United States v. Eagle*, 293 Fed.Appx. 506 (9th Cir. 2008) (affirming life sentence based upon defendant's sexual abuse of young girls and extensive criminal history following trial convictions 18 U.S.C. §§ 1153, 2241(c), and 2243(a)).  It is unclear from that brief opinion whether the life sentence was mandatory pursuant to the recidivist sexual-violator provision contained in 18 U.S.C. § 2241(c).

[12]In July 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, PL 109–248, July 27, 2006, 120 Stat 587, which instituted a 30-year mandatory-minimum sentence for violations of 18 U.S.C. § 2241(c).  Mr. Kyle thus catalogs cases only as far back as 2006.  Nevertheless, although not presented in the text, Mr. Kyle's review of Ninth Circuit cases did not unearth any case, save the one presented in the prior footnote, in which a section 2241(c) violation resulted in a sentence as harsh as Mr. Kyle's.

From this catalogue of cases Mr. Kyle has excluded cases in which the defendant was subject to a *mandatory* life sentence due to a prior section 2241(c) conviction or an equivalent state conviction.  *See e.g.*, *United States v. Amos*, 2012 WL 3608600, * 5 (6th Cir. 2012).

- *United States v. Lyons*, 363 Fed.Appx. 485 (9th Cir. 2010) (affirming 360-month sentence for aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153(a) and 2241(c));

- *United States v. Lamere*, 337 Fed.Appx. 669 (9th Cir. 2009) (affirming 360-month sentence for violation of section 2241(c));

- *United States v. Sandcrane*, 311 Fed.Appx. 54 (9th Cir. 2009) (affirming 360-month sentence for violation of section 2241(c));

- *United States v. Tuchawena*, 222 Fed.Appx. 659 (9th Cir. 2007) (eight-year sentence for aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D));

- *United States v. Hill*, 222 Fed.Appx. 635 (9th Cir. 2007) (affirming 135-month sentence for violation of 18 U.S.C. §§ 1153, 2241(c)); and

- *United States v. Child*, 167 Fed.Appx. 666 (9th Cir. 2006) (220-month sentence for violation of 18 U.S.C. §§ 2241(c) and 1153).

Most directly, in cases involving similar conduct of conviction, defendants in this Circuit and elsewhere[13] have essentially received the 30-year sentence

_____

[13]*See e.g.*, *United States v. Schumaker,* 2012 WL 1886481 (11th Cir. 2012) (affirming 360-month sentence for violating 18 U.S.C. § 2241(c)); *United States v. White Bull*, 646 F.3d 1082 (8th Cir. 2011) (same); *United States v. DeCoteau*, 630 F.3d 1091 (8th Cir. 2011) (same); *United States v. King*, 604 F.3d 125 (3d Cir. 2010) (same in case involving sexual assault of two year old); *United States v. DeMarce*, 564 F.3d 989 (8th Cir. 2009) (affirming 360-month sentence for violation of 18 U.S.C. § 2241(c)); *United States v. Lohnes*, 554 F.3d 1166 (8th Cir.

(continued...)

46

required by the statute. The disparity presented by the district court's sentence is unwarranted and is substantively unreasonable.

## IX. Conclusion

For the reasons set forth above, Appellant Kenneth Martin Kyle respectfully asks the Court to vacate his conviction and remand the matter to permit him to withdraw his plea and proceed before a different district judge. At a minimum, he respectfully asks the Court to enter an Order vacating his sentence and remanding the matter to a different district judge for resentencing.

Respectfully submitted,

Dated: October 26, 2012                COLEMAN & BALOGH LLP

ETHAN A. BALOGH
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440

Attorneys for Defendant/Appellant
KENNETH MARTIN KYLE

---

[13](...continued)
2009) (same); *United States v. Mooney*, 303 Fed.Appx. 737 (11th Cir. 2008) (affirming 360-month sentence for interstate enticement of a minor to engage in sexual activity and aggravated sexual abuse with a minor in violation of 18 U.S.C. §§ 2422(b), 2241(c)).

47

## <u>CERTIFICATE OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, counsel reports that he is not aware of any related cases pending before this Court.

Dated: October 26, 2012

ETHAN A. BALOGH

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32 and Ninth Circuit Rule 32-1, the attached Opening/~~Answering/Reply~~ Brief is:

Proportionately spaced, has a typeface of 14 points or more, and contains 10,574 words.


Date: October 26, 2012

ETHAN A. BALOGH

## <u>PROOF OF SERVICE</u>

I, Ethan A. Balogh, certify that on October 26, 2012, I caused to be sent by hand delivery one copy of Appellant Kenneth Martin Kyle's Excerpts of Record and one sealed copy of the Presentence Report to:

> Owen Martikan, Esq.
> Office of the United States Attorney
> 450 Golden Gate Avenue
> San Francisco, CA 94102

I further certify that I have caused to be filed electronically a copy of this Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and that all parties to whom I am required to provide service are registered CM/ECF users and that service of the Opening Brief shall be accomplished by the appellate CM/ECF system.

I further certify that I caused today to be sent by hand delivery four copies of Appellant Kenneth Martin Kyle's Excerpts of Records and four copies (Under Seal) of Mr. Kyle's Presentence Report to the Office of the Clerk, United States Court of Appeals for the Ninth Circuit, 95 Seventh Street, San Francisco, California 94103.

Dated: October 26, 2012

ETHAN A. BALOGH

1