No.  12-10208


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

KENNETH MARTIN KYLE,

Defendant/Appellant.
_____

**APPELLANT KENNETH MARTIN KYLE'S
BRIEF IN REPLY**

Appeal from the United States District Court
for the Northern District of California
The Honorable Jeffrey S. White
United States District Judge
No. 10 Cr. 245 JSW


COLEMAN & BALOGH LLP
ETHAN A. BALOGH
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440

Attorneys for Defendant/Appellant
KENNETH MARTIN KYLE

# TABLE OF CONTENTS

I. Argument in Reply....................................................................................1

    A.    The Government cannot enforce any appellate waiver against Mr. Kyle.............................................................................................1

        1.    The Government's breach precludes enforcement of any appellate waiver.................................................................2

            a.    The Government independently breached the plea agreement when it foreswore arguing that Mr. Kyle "deserve[d] a lighter sentence than life in prison.".........4

        2.    The Government's argument on appeal undermines any finding that Mr. Kyle waived his right to appeal....................................5

        3.    The waiver presented by the Government cannot apply to Mr. Kyle's Rule 11 claim................................................6

    B.    The district court violated Rule 11.......................................................7

        1.    The Government misstates the standard of review applicable to Mr. Kyle's Rule 11 claim.............................................8

        2.    The Government's truncated view of "judicial participation in plea discussions" cannot be squared with *Bruce* or *Anderson*..................................................................10

        3.    Mr. Kyle did not invite the district judge to pre-announce his sentence.....................................................................13

    C.    The Government defends the district judge's antagonistic comments by pursuing an incorrect standard of review and recasting the actual comments so as to ignore their troubling import, amongst other diversions...............................................................................16

    D.    The district judge miscalculated the applicable Guidelines...............18

1.  The cross-reference in USSG § 2A3.1(c)(2) does not apply....18

2.  Mr. Kyle did not "use a computer" within the meaning of USSG § 2A3.1..........................................................................19

3.  Mr. Kyle's argument regarding the "vulnerable victim" enhancement is foreclosed by *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004)...................................................................20

E.  The 450-month sentence is substantively unreasonable............................................................................21

II. Conclusion...........................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Liteky v. United States*, 510 U.S. 540 (1994)......................................17, 18

*United States v. Alcala-Sanchez*, 666 F.3d 571 (9th Cir. 2012)..........................3, 4

*United States v. Anderson*, 993 F.2d 1435 (9th Cir. 1993)................................7, 11

*United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007)................................................6

*United States v. Bruce*, 976 F.2d 552 (9th Cir. 1992)....................................*passim*

*United States v. Cano-Varela*, 497 F.3d 1122 (10th Cir. 2007)....................8, 9, 11

*United States v. Crowell*, 60 F.3d 199 (5th Cir. 1995)........................................9, 10

*United States v. Gonzalez*, 16 F.3d 985 (9th Cir. 1993)............................................4

*United States v. Gonzalez-Melchor*, 648 F.3d 959 (9th Cir. 2011)..........................6

*United States v. Holt*, 510 F.3d 1007 (9th Cir. 2007)..............................................20

*United States v. Lynn,* 636 F.3d 1127 (9th Cir. 2011)..............................................20

*United States v. McEnry*, 659 F.3d 893 (9th Cir. 2011)..............................................7

*United States v. McTiernan*, 695 F.3d 882 (9th Cir. 2012)..............................17, 18

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)....................................21

*United States v. Olano*, 507 U.S. 725 (1993).............................................................4

*United States v. Rahman*, 642 F.3d 1257 (9th Cir. 2011)..........................................6

*United States v. Rangel*, 697 F.3d 795 (9th Cir. 2012)............................................16

*United States v. Rodriguez-Lara*, 421 F.3d 932 (9th Cir. 2005).............................9

*United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012)......................................3, 4

*United States v. Wright*, 373 F.3d 935 (9th Cir. 2004)..........................................20

## Statutes

18 U.S.C. § 3553....................................................................................................22

28 U.S.C. § 2106 ....................................................................................................7

## Rules

Fed. R. App. 11...............................................................................................*passim*

## Guidelines Provisions

USSG § 2A3.1...................................................................................................18, 19

# I. Argument in Reply

After taking great care before the district court to avoid inflaming emotions, the Government goes tilt on appeal, pressing to ignite this Court's passions rather than addressing squarely the distinct legal issues at bar. Although appellant Kenneth Kyle presented the PSR under seal for the Court's review, and in his opening brief recited verbatim the Government's "Statement of Facts" from its Sentencing Memorandum, the Government nevertheless mines the PSR for an unnecessary graphic presentation, so much so, it filed its brief under seal. *See* Ninth Circuit Docket No. 22. This approach was completely unnecessary, and the Court should decline the Government's invitation to assess Mr. Kyle's assignments of legal error emotionally.

## A.     The Government cannot enforce any appellate waiver against Mr. Kyle.

As anticipated, the Government seeks to avoid this appeal by citing an appellate waiver in Mr. Kyle's plea agreement. GAB 17.[1] But the Government skirts the relevant analysis, and as a result, falls short of meeting its burden to establish an enforceable waiver.

---

[1] "GAB" refers to the Government's Answering Brief, "AOB" to Appellant's Opening Brief, "Dkt" to entries on the district court's docket, "ER" to Appellant's Excerpts of Record, "SER" to the Government's Supplemental Excerpts of Records, and "PSR" to the Presentence Report.

1

**1.    The Government's breach precludes enforcement of any appellate waiver.**

As presented in the Government's Sentencing Memorandum to the district court, Mr. Kyle provided an inculpatory proffer "[a]s a precondition to his plea agreement."  ER 82.  The Government also agrees, as it must, that in exchange for this truthful proffer, the Government "promise[d] not to use [at sentencing] any statements that Kyle made during the proffer[.]"  GAB 9.  And the Government concedes that it is "true that the case agent's remark [to the probation officer] breached the proffer agreement[.]" GAB 20.

Despite these concessions, the Government claims its breach doesn't matter because the proffer agreement "has nothing to do with the plea agreement."  GAB 20.  The Government is incorrect.

As established by the Government's own filing, Mr. Kyle's proffer comprised "a precondition" to the plea agreement.  ER 82.  And the proffer agreement extended the Government's promise *not* to use the information against Mr. Kyle at sentencing, the focus of the plea agreement.  The Government's *ipse dixit* assertion that these two agreements are completely unrelated cannot withstand even the barest scrutiny.  The Government linked them expressly.

2

Moreover, Mr. Kyle demonstrated in his opening brief that this Court addressed (and provided relief based upon) the prosecution's similar breach of a proffer agreement just this year in *United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012). AOB 16-18. But the Government neither answers *Whitney* nor cites a case to support its argument.

Indeed, the thrust of the Government's argument—that its breach was immaterial, *see* GAB 20-21—ignores the very Supreme Court and Ninth Circuit precedent upon which Mr. Kyle relies. AOB 15-18. Most simply, "[i]t does not matter [whether] a breach is inadvertent or that the statements or arguments the prosecutor makes in breach of the agreement do not influence the sentencing judge." *United States v. Alcala-Sanchez*, 666 F.3d 571, 575 (9th Cir. 2012) (quotations and citations omitted). Moreover, this holding applies to a defendant's independent claim of breach, *see id.*, a more difficult claim to sustain than Mr. Kyle's defensive application of the Government's breach here.

In sum, because the Government stands in breach, it may not enforce any appellate waiver against Mr. Kyle.[2]

_____

[2]The Government incorrectly asserts that Mr. Kyle "waived" any claim of breach by not objecting below. GAB 20-21. By not objecting below, Mr. Kyle forfeited (but did not waive) a stand-alone claim for breach, and if he raised any such claim it would be subject to plain error review under Fed. R. Crim. P. 52(b).

(continued...)

3

### a.     The Government independently breached the plea agreement when it foreswore arguing that Mr. Kyle "deserve[d] a lighter sentence than life in prison."

In addition, on appeal, the Government presents a letter it wrote to the district judge regarding the second plea agreement.  SER 6-7.  Therein, the Government states "[i]t is difficult to argue that this defendant deserves a lighter sentence than life in prison, and the United States does not make that argument here."  SER 7.  By foreswearing the argument that Mr. Kyle "deserve[d] a lighter sentence than life in prison"—the very argument it was required to make under the plea agreement, *see* ER 15—the Government committed an independent breach of the plea agreement.  *See Whitney*, 673 F.3d at 971; *see also Alcala-Sanchez*, 666 F.3d at 575-76 (finding the Government in breach even though it later "admitted its mistake and recommended the agreed-upon sentence before the district court"); (holding the equivocation by the Government, even if later corrected, constitutes a

---

[2](...continued)
*See United States v. Olano*, 507 U.S. 725, 732-33 (1993).  But Mr. Kyle has *not* brought a stand-alone claim of breach.  Rather, Mr. Kyle interposes his claim defensively against the Government's assertion of waiver.  AOB 15-18; *see also United States v. Gonzalez*, 16 F.3d 985, 990 (9th Cir. 1993) (Government's breach of sentencing agreement renders defendant's appellate waiver unenforceable).  As a result, Mr. Kyle could have properly waited until this reply brief to defend against the Government's claim of appellate waiver; nevertheless, he predicted the argument and addressed it in his opening brief.  In any case, Mr. Kyle cannot be found to have either waived or forfeited this defense to the Government's attempted enforcement of an appellate waiver.

breach of its obligations to the defendant). This independent breach of the plea agreement also precludes the Government from enforcing any appellate waiver against Mr. Kyle.

>    **2.    The Government's argument on appeal undermines any finding that Mr. Kyle waived his right to appeal.**

While claiming Mr. Kyle waived his appellate rights, the Government points to the plea agreement's recitation that it "contain[ed] all of the promises and agreements between Kyle and the government[.]" GAB 20. But the Government admits that this clause—crafted by the Government—was not true, for there in fact existed another promise, in writing, between Mr. Kyle and the Government, *i.e.*, the proffer agreement. GAB 9; *see also* ER 158 (proffer agreement).

This undisputed truth undermines any finding that Mr. Kyle's entry of waiver was knowing and voluntary. In short, because Mr. Kyle admitted, in open court and at the direction of the Government, to "facts" that are indisputably inaccurate, this Court can have no confidence in the accuracy of Mr. Kyle's other responses at his Rule 11 colloquy. Rather, Mr. Kyle contends that when a plea colloquy is indisputably inaccurate, the Court cannot find that the defendant "knowingly" relinquished his rights. Put another way, the Government's claim that it could insulate this issue from appeal by including an inaccurate provision

5

into Mr. Kyle's plea agreement is cause for concern, and does not support a finding of waiver. The Government's presentation thus derails its attempt to meet its burden to show the "knowing" and "voluntary" entry of an appellate waiver. *See* GAB 18 *citing United States v. Rahman*, 642 F.3d 1257, 1258 (9th Cir. 2011).[3]

### 3.    The waiver presented by the Government cannot apply to Mr. Kyle's Rule 11 claim.

Mr. Kyle contends that regardless of the Court's resolution of his claim of breach, his Rule 11 claim is not subject to any appellate waiver. *See* AOB 15 n.4 *citing United States v. Gonzalez-Melchor*, 648 F.3d 959, 962-65 (9th Cir. 2011) (holding appellate waiver following judicial violation of Rule 11 to be "invalid and unenforceable"); *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) ("An appeal waiver will not apply if . . . the defendant's guilty plea failed to comply with Fed. R. Crim. P. 11").

---

[3] The parties also disagree about whether this Court's refusal to hear Mr. Kyle's recusal and sentencing challenges would result in a miscarriage of justice. *Compare* AOB 19 *with* GAB 21-22. Because any assessment of the "miscarriage of justice" exception is intertwined with the merits, Mr. Kyle will address his disagreements with the Government's recusal and sentencing analyses *infra*. Should the Court agree with Mr. Kyle, he respectfully contends that the failure to give relief based upon those errors would result in a miscarriage of justice.

6

The Government acknowledged this independent challenge, and promised to address it "beginning at page 22" of its brief, GAB 21 n.3, but never did. *See* GAB 22-29. Accordingly, that argument is waived, *see United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011), and the Court may review Mr. Kyle's Rule 11 claim in any event.

**B.    The district court violated Rule 11.**

Mr. Kyle claims that the district judge violated Rule 11 when he announced his intent to impose a life-sentence upon any trial conviction. AOB 21-23. Thereafter, Mr. Kyle's need to obtain *any* agreement to avoid the district judge's stated ends rose exponentially, while his bargaining position with the Government fell to naught. *See* AOB 22-24 *citing United States v. Bruce*, 976 F.3d 552 (9th Cir. 1992); *United States v. Anderson*, 993 F.2d 1435 (9th Cir. 1993).

The Government never addresses this argument, pays scant attention to *Bruce*, and ignores *Anderson*. It instead offers three arguments to avoid Mr. Kyle's claim of error, each of which falls short. Similarly, the Government does not oppose Mr. Kyle's request for reassignment upon remand to a different district judge pursuant to 28 U.S.C. § 2106, and thus waives any contrary argument. *See McEnry*, 659 F.3d at 902.

7

1.     **The Government misstates the standard of review applicable to Mr. Kyle's Rule 11 claim.**

In *Bruce*, this Court held that "[a] district court's failure to comply with with provisions of Rule 11[] *is* plain error even if the error is identified for the first time on appeal."  976 F.2d at 554 (emphasis added).  As Mr. Kyle has explained, because this "duty to abide that rule *does not* arise as a result of any motion made by the defendant[, and because] the court is bound by the Rule's restrictions[,]" this Court reviews the claim "*de novo*" and upon finding a violation, vacatur and remand are required.  AOB 20 *quoting Bruce*, 976 F.2d at 554-55 (emphasis added).

The Government ignores this holding completely.  GAB 22.  Instead, it asks the Court to apply a different test from a Tenth Circuit case in which (1) the parties *stipulated* to the non-*Bruce* test, and (2) never discussed *Bruce*'s recitation of the proper standard of review.  *Id*. *citing United States v. Cano-Varela*, 497 F.3d 1122, 1131 (9th Cir. 2007) [sic].[4]  Despite the Government's claim that *Cano-Varela* stands as Ninth Circuit authority, GAB 22, it does not; *Cano-Varela*

---

[4]Although *Cano-Varela* did not discuss *Bruce* with respect to the standard of review, it did adopt *Bruce*'s and other Circuit holdings prohibiting judicial "discussion of the penal consequences of a guilty plea as compared to going to trial [as] inherently coercive[.]" *Cano-Varela*, 497 F.3d at 1133.  *See also infra.*, Part I.B.2.

8

comes from the Tenth Circuit. *United States v. Cano-Varela*, 497 F.3d 1122, 1131 (10th Cir. 2007).[5]  Not only does *Cano-Valera* fall short of controlling precedent, it is unpersuasive because the parties there stipulated to a standard of review contrary to this Court's holding in *Bruce*.  (Notably, despite the parties' stipulation, the Tenth Circuit expressed concern about applying that more difficult standard of review.  *Id*. at 1132.  The Court ultimately determined it "need not resolve this question, however, because [it] conclude[d] that even under the plain error standard, [it] must reverse."  *Id*.)

As in *Bruce*, this Court's *de novo* determination that the district court participated in the parties' plea discussions requires vacatur of the conviction, and remand.[6]

_____

[5]Even if *Cano-Varela* arose in the Ninth Circuit, it would not control.  *See United States v. Rodriguez-Lara*, 421 F.3d 932, 943 (9th Cir. 2005) (Where two panel opinions conflict, this Court is bound to follow the earlier opinion).

[6]Because *Bruce* controls, the Court does not perform the four-factor *Olano* test.  *Cf*. GAB 27-29.  In other words, the Government's assertion of harmless error has no effect because "a defendant who has pled guilty after a judge has participated in plea discussions should be allowed to replead, *without* having to show that actual prejudice resulted from the participation."  *Bruce*, 976 F.2d at 558 (emphasis added).  But even if Mr. Kyle did have to show prejudice, he could: the district court's pre-announced intended sentence coerced Mr. Kyle to pursue and accept a much harsher plea agreement to avoid the district judge's stated ends.  *See* AOB 22-23.

The Government's reliance on *United States v. Crowell*, 60 F.3d 199, 204

(continued...)

**2.    The Government's truncated view of "judicial participation in plea discussions" cannot be squared with *Bruce* or *Anderson*.**

The Government claims that the district court must discuss a potential plea agreement with the defendant to "participate in plea discussions" within the meaning of Rule 11.  GAB 22-26.  This Circuit's precedent is not so limited.  As presented in Mr. Kyle's opening brief, Rule 11 prohibits "any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to [the judge] of a plea agreement."  AOB 21 *quoting Bruce*, 976 F.2d at 556 (quotation marks and brackets omitted, emphasis omitted).  Because the Government concedes, as it must, that the district judge pre-announced his intent to impose a life sentence upon any trial conviction, *see* GAB 23, the district judge's comments violated Rule 11.

Similarly, the Government's major premise—that the district court must have *intended* or *attempted to influence* plea negotiations in order to violate Rule 11, *see* GAB 24 —finds no support in the Rule or in the case law.  Indeed, the

---

[6](...continued)
(5th Cir. 1995), *see* GAB 27 & 28, is misguided.  Indeed, it is cause for genuine concern that the Government has again cited as controlling authority an out-of-circuit case (*Crowell* is from the Fifth Circuit) while passing it off as Ninth Circuit authority.  *See* GAB at 27 *citing Crowell* as "60 F.3d 199, 204 (9th Cir. 1995 [sic])."  *See also* GAB 22 (mis-citing *Cano-Varela* as Ninth Circuit authority).  *Bruce* controls, not *Crowell*.

Government offers no authority to support those incorrect propositions. Rather, this Court has squarely held Rule 11's prohibition extends both to pre-announcing intended sentences and to comments which place "the weight of the court behind the prosecution." *Bruce*, 976 F.3d at 556; *Anderson*, 993 F.2d at 1439. The district judge transgressed both those lines.

Given the clarity of the district judge's impermissible intrusion, the Government tries to cabin the district judge's pre-announced sentence as a "case-management decision" that arose from the district judge's "irritation with continued delays in the case." GAB 24 *citing Cano-Varela*, 497 F.3d at 1132. This argument miscasts both the law and the facts.

The Tenth Circuit's decision in *Cano-Varela* actually supports Mr. Kyle. There, the Court noted that courts may properly make case management decisions, such as refusing to extend a plea cut-off date. *Id*. at 1132-33. The Court noted there is nothing coercive about setting deadlines for a defendant to opt for contesting guilt or admitting culpability. *Id*. at 1133. But that has nothing to do with the pre-announcement of a sentence. Indeed, as *Cano-Varela* noted:

> the Courts of Appeals all appear to hold that any discussion of penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well intentioned. Likewise, after rejecting a proposed plea, a court may not offer guidance regarding what terms in a subsequent plea agreement it would find acceptable.

11

*Id. citing, inter alia, Bruce*, 976 F.2d at 558 (citations omitted).  Despite this clear prohibition, the district judge told Mr. Kyle the consequence of going to trial: the imposition of a life sentence.

Nor can the Government fairly characterize the district court's pre-announcement of a life sentence as a "trial management decision."  The only "trial management decision" was setting the trial date; that decision occurred prior to and independently of the judge's later pre-announced intended sentence.  *Compare* ER 40-41 (district court setting trial date at outset of the setting conference) *with* ER 42 (district court pre-announcing intended life sentence).  In sum, no "trial management decision" was involved with the district judge's pre-announced sentence.[7]

Under the Government's reading of Rule 11, at every trial setting, a district judge may tell the parties his or her view of the likely sentence without running afoul of Rule 11.  *See* GAB 23-25.  *Bruce* holds otherwise.

---

[7]Similarly, the Government asserts that the judge's pre-announced sentence came in response to a defense request for a further continuance.  GAB 23.  That claim is untrue.  The district court set the trial date, *see* ER 40-41, and when asked for comment, defense counsel agreed to the date and noted his intent to continue working towards a disposition short of trial.  ER 42.  Counsel did not seek any further continuance.  *Id.*

### 3.    Mr. Kyle did not invite the district judge to pre-announce his sentence.

The Government's last gasp seeks to bring this case within *United States v. Frank*, 36 F.3d 898 (9th Cir. 1994).  This case is nothing like *Frank*.

In *Frank*, the defendants worked out a package deal mid-trial.  *Id*. at 899. Before the jury came out for the day, the lawyers went into chambers and told the district judge that they had negotiated plea agreements.  *Id*.  The judge inquired about the agreement so "he could say whether it would be a waste of time and they should just go ahead with the trial."  *Id*.  After learning the terms, the judge agreed to put the agreement on the record, send the jury home, and take the changes of plea the next day.  *Id*.  As the lawyers were leaving chambers, defense counsel asked the judge "what he would have done if Frank had not made a plea agreement."  *Id*.  The judge replied he would have sentenced Frank to life.  *Id*. The parties entered guilty pleas the next day.  *Id.* at 899-900.

On appeal, Frank claimed the district judge violated Rule 11.  *Id.* at 901. This Court found no error.  It first held that the in-chambers remarks were permissible in connection with the district court's trial management responsibilities—*viz.*, the judge needed to assess the proposed agreement to decide what to do with the jury.  *Id.* at 903.  It also noted that the district judge's remark

13

about sentence was made in "the subjective mode, condition contrary to fact, as in, what would you have done if we had not agreed on a deal[,]," and that even if it was not, and "even if it was error for the judge to answer [the] question, at worst it was invited error" because "Frank's lawyer asked him." *Id.*

*Frank* is thus inapposite, for two reasons. *First*, the defendant there had reached his plea agreement before the trial judge commented on the sentence, and thus plea negotiations were concluded. In other words, the district court could not be found to have "participated in plea discussions" because, unlike here, the parties had reached their agreement *before* the judge commented. *Frank* expressly distinguished *Bruce* on this point, noting that "[i]n *Bruce*, the defendants had not agreed to the deal worked out between the lawyers" before the colloquy. *Frank*, 36 F.3d at 902; *see also id*. (the challenged "colloquy took place *after*, not before, the parties had concluded their agreement[.]") (emphasis added).

And *second*, the defendant's counsel expressly asked the court to comment on his intended post-trial sentence. Mr. Kyle did not. Rather, after the district court set the trial date, defense counsel merely noted, as is typical, that he hoped to negotiate the case with the Government. ER 42. He did not ask the district judge anything. Rather, the district judge "volunteered" his pre-announced sentence. *Id*. Thus, this case is the opposite of *Frank.* 36 F.3d at 904 ("Nor did the judge

volunteer the remark about what sentence he would have liked to impose").

Moreover, *Frank* noted that had the judge informed "the defendant [he] faced life if he went to verdict and lost, . . . we would have a case like *Bruce*." *Id* at 903. That conduct tracks the district court's in this case, *viz*., the district judge told Mr. Kyle he would get life in prison upon any trial conviction. Thus, *Frank* actually supports Mr. Kyle's challenge and shows this case is just like *Bruce*.

Finally, the Government's citation to an earlier hearing where Mr. Kyle asked the district judge for additional guidance upon his rejection of the original plea agreement, *see* GAB 26 *citing* ER 70-71, has no effect on Mr. Kyle's claim. Mr. Kyle does *not* challenge the judge's response from the October 13, 2011 hearing. (Indeed, the district judge then noted he was "not permitted" to respond because of Rule 11's strict prohibitions. ER 71.) Instead, Mr. Kyle contends that the district judge's volunteering of his intended life sentence at the February 2, 2012 hearing violated Rule 11.

The Government's assertion that the district judge was "answering" a question he declined to answer four months earlier when he volunteered his intended sentence in February, *see* GAB 27, is frivolous. So too is its argument that after the judge declined counsel's limited inquiry in October, the district judge was thereafter freed from Rule 11 and could later volunteer anything about his

15

intended sentence and the consequences of going to trial.  *See* GAB 26.  *Bruce* and

*Frank* prove the Government is incorrect.

## C.     The Government defends the district judge's antagonistic comments by pursuing an incorrect standard of review and recasting the actual comments so as to ignore their troubling import, amongst other diversions.

The Government offers a variety of defenses to the district judge's

expressed wish that Mr. Kyle meet with an unfortunate end while in prison.  None

is persuasive.

*First*, the Government ignores Mr. Kyle's reliance on the futility doctrine,

and the applicability of the abuse of discretion standard of review.  *Compare* AOB

26 *with* GAB 29.  That doctrine applies here, where the district judge betrayed his

deep-seated antagonism at the time of sentencing, and the Government provides

no reasons why it should not.  The sole case it cites—*United States v. Rangel*, 697

F.3d 795, 804 (9th Cir. 2012), *see* GAB 29—did not address the futility doctrine.

Rather, *Rangel* stands for the unremarkable proposition that "expressing sympathy

for the victims' plight, with general references to the 'American dream,' in no way

implies that the district court judge could not and did not impartially impose a

sentence" and the lack of objection was subject to plain error.  *Id*. at 804-05.

16

*Second*, after essentially conceding the "rare case" exception recognized by *Litkey v. United States*, 510 U.S. 540 (1994), *see* GAB 29, the Government then misstates the law and claims that "[p]arties to a proceeding may not attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." GAB 29 *citing United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012). Of course, the Supreme Court has expressly held otherwise. *See* AOB at 27-28 *quoting Liteky*, 510 U.S. at 551, 554, 555. Indeed, *McTiernan* itself recognized the "rare case" exception on the very page the Government cites, but then misdescribes.

*Third*, the Government ignores what the district court said—that he wished Mr. Kyle met with an unfortunate end in prison, *see* ER 30-31 ("I hope you don't survive in prison" followed by a recommendation to house Mr. Kyle in a maximum-security institution)—and recasts it as simply a statement that he hoped he imposed the equivalent of a life sentence. GAB 30. Even worse, the Government then argues that these judicial comments were wholly appropriate given Mr. Kyle's conduct and fantasies. GAB 30.[8] Mr. Kyle disagrees, and contends that regardless of his conduct, no jurist can properly tell a defendant he

---

[8]The Government's inaccurate claim that Mr. Kyle "repeated[ly] raped" the victim in this case, *see* GAB 30, is troubling, both for its inaccuracy and because it asks this Court to assess this claim with emotion, not reason.

17

should be killed in prison.  In short, the district judge's troubling wishes were far worse than intemperate, and betrayed a deep-seated antagonism which would cause a reasonable person to question the judge's impartiality.  *See* AOB 28 *citing Liteky*, 510 U.S. at 548.  The Government does not even discuss this applicable standard because it has no answer.

*Last*, the Government claims that this case is like *McTiernan*, because there, after labeling the defendant a "liar" and finding him "not credible," the district judge imposed a below-Guidelines sentence of 12 months and here, the district court, after wishing Mr. Kyle an unfortunate end, imposed a substantially above-Guidelines sentence of 450 months (which was effectively a term of life) instead of an actual life sentence.  GAB 30-31.  Respectfully, neither the district judge's comments nor sentence in *McTiernan* come remotely near this case.

**D.    The district judge miscalculated the applicable Guidelines.**

**1.    The cross-reference in USSG § 2A3.1(c)(2) does not apply.**

The Government defends the application of the cross-reference—one it declared *did not* apply when it formulated the first plea agreement, *see* ER 151-53—by asserting that Mr. "Kyle sexually abused infant *for the purpose* of producing visual depictions of that abuse."  GAB 33.  The evidence it marshals for this claim is Mr. Kyle's incidental photographing of his conduct.  *Id*.

18

In sum, any fair reading of the PSR demonstrates that Mr. Kyle's focus and purpose was the abuse, troubling as it was. *See* PSR ¶ 17 (Van Vlerah recounting Kyle's focus on exploiting her child and wanting to exploit others). But the Government wholly ignores this animus, and simply asserts that photographs taken incidentally to the crime make the cross-reference applicable. The plain language of Guideline section 2A3.1(c)(2) is contrary, and the Government's initial presentation of this case to the district court was correct.

**2.     Mr. Kyle did not "use a computer" within the meaning of USSG § 2A3.1.**

The facts show that Mr. Kyle did not use a computer to "solicit [the minor's] participation" in the sexual conduct. *See* AOB 32-33, GAB 34. Nevertheless, the Government contends that because (1) Mr. Kyle and the victim's mother met online, and (2) exchanged emails, including child pornography, Mr. Kyle must be deemed to have "used a computer" within the meaning of section 2A3.1. GAB 34. The Government's recitation demonstrates the merit of Mr. Kyle's claim for relief. Neither of those "uses of the computer" included the solicitation of the minor's participation (through Van Vlerah). Indeed, even though the Government seized and searched all of Mr. Kyle's electronic media, *see* AOB 9-12 (detailing searches and seizures), it failed to uncover *even one*

19

email or other exchange in which Mr. Kyle solicited the minor's participation via computer. Accordingly, there was no factual basis to support this enhancement, and the district court plainly erred when applying it.

The Government also supports this enhancement by citing to Mr. Kyle's payments for a mobile telephone used by co-defendant Van Vlerah. GAB 34.[9] But that citation only further supports Mr. Kyle's challenge because section 2A3.1 does not impose an enhancement for use of a mobile phone, even if it was used to solicit the minor's participation. USSG § 2A3.1.

### 3.    Mr. Kyle's argument regarding the "vulnerable victim" enhancement is foreclosed by *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004).

The Government argues that this Court has "held that it is not error to apply the vulnerable victim enhancement along with an age-related enhancement in the context of a child pornography victim who is an infant." GAB 35 *citing United States v. Lynn,* 636 F.3d 1127, 1138 (9th Cir. 2011); *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007). While neither *Lynn* nor *Holt* say what the Government claims, they do lead directly to *Wright*, which does foreclose Mr. Kyle's challenge before a three-judge panel. 373 F.3d at 933-34. While Mr. Kyle

_____

[9]The Government incorrectly claims Mr. Kyle "purchased" this telephone for Van Vlerah. GAB 34. The PSR establishes otherwise. PSR ¶ 17.

preserves this claim should *en banc* or Supreme Court authority in this or another case overrule *Wright*, Mr. Kyle recognizes that at this stage, the Court may not entertain his challenge. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

*        *        *        *        *

Based on the misapplication of the cross-reference and the "use of the computer" enhancement, the district judge miscalculated the Guidelines to advise a sentence of 324-405 months; a proper calculation of the Guidelines advised a sentence of 210-262 months. As is plain, the initial 360-month mandatory-minimum sentence constituted a significant above-Guidelines sentence. But the district court never understood this reality based on its miscalculation of the Guidelines. For the reasons set forth in Mr. Kyle's opening brief, *see* AOB 38-39, the Court should notice this plain error, which prejudiced Mr. Kyle greatly before the district court, and it should at a minimum remand the matter for resentencing before a different district judge.

**E.    The 450-month sentence is substantively unreasonable.**

The Government defends a sentence that doubles the Guidelines, and is from 15 to 20 years *longer* than the Guidelines prescribe, by simply claiming it worthy of Mr. Kyle's conduct. GAB 37.

21

The Government provides no explanation as to why its detailed and forceful argument that a 360-month sentence met the standards of 18 U.S.C. § 3553(a) no longer has merit, even though it made that argument under a miscalculation of the Guidelines that suggested a sentence of 262-327 months, instead of 210-262 months. *Compare* AOB 40-46 *with* GAB 37-38. Nor does the Government persuasively address the almost uniform imposition of 360 month sentences for section 2241(c) violations, including in cases involving toddlers. *Compare* AOB 44-46 *with* GAB 37-38. And while the oral copulation at issue certainly stands as a terrible act, Mr. Kyle respectfully suggests that the sexual abuse of toddlers and young children under 12 all significantly harms those victims, which explains why Congress has required a 30-year sentence for those cases, without exception.

For the reasons presented in his opening brief, Mr. Kyle respectfully contends that the district court's 450-month sentence is substantively unreasonable. *See* AOB 39-46.

## II.  Conclusion

For the reasons set forth above, Appellant Kenneth Martin Kyle respectfully asks the Court to vacate his conviction and remand the matter to permit him to withdraw his plea and proceed before a different district judge. At a minimum, he

22

respectfully asks the Court to enter an Order vacating his sentence and remanding the matter to a different district judge for resentencing.

        Respectfully submitted,

Dated: December 14, 2012       COLEMAN & BALOGH LLP

ETHAN A. BALOGH
744 Montgomery Street, Fifth Floor
San Francisco, CA 94111
Telephone: 415.391.0440

Attorneys for Defendant/Appellant
KENNETH MARTIN KYLE

## <u>CERTIFICATE OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, counsel reports that he is not aware of any related cases pending before this Court.


Dated: December 14, 2012

ETHAN A. BALOGH

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32 and Ninth Circuit Rule 32-1, the attached ~~Opening/Answering/~~Reply Brief is:

Proportionately spaced, has a typeface of 14 points or more, and contains 5,114 words.

Date: December 14, 2012

ETHAN A. BALOGH

## **PROOF OF SERVICE**

I, Ethan A. Balogh, certify that on December 14, 2012, I caused to be filed electronically a copy of this Appellant's Brief in Reply with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and that all parties to whom I am required to provide service are registered CM/ECF users and that service of the Opening Brief shall be accomplished by the appellate CM/ECF system.

Dated: December 14, 2012

ETHAN A. BALOGH

1